UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN YOUNG,

        Petitioner,

v.                                       Case No. 18-10403

CARMEN PALMER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Stephen Young, ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. § 2254. After a bench trial in the Wayne Circuit Court, Petitioner was convicted of felonious assault, MICH. COMP. LAWS § 750.82, being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced as a third-time habitual felony offender to two months' probation for the assault and felon-in-possession convictions and ten years' imprisonment for the felony-firearm conviction.

In the instant petition, Petitioner raises four claims: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) illegality of Petitioner's ten-year sentence, and (4) sufficiency of the evidence. For the reasons explained below, the court will deny the petition because Petitioner's claims are without merit or barred by state court procedural default. The court will also decline to issue a certificate of appealability.

# I. BACKGROUND

## A. Factual History

Petitioner's convictions stem from an incident that occurred in a hotel parking lot. A bench trial was held at which several individuals present at the hotel incident testified. The court summarizes the relevant witness testimony below.

Jamie Santti, the victim, testified that sometime after midnight on October 13, 2012, she and her husband, Joshua Santti, were with Petitioner at the hotel for a birthday party. Petitioner was a life-long family friend of Jamie. The party occurred in a hotel room, but the attendees were asked to leave after arguments broke out. The attendees moved to the hotel parking lot, where the arguments continued. One attendee, Jimmy Rapp, began to argue with Joshua Santti. Jamie testified that she tried to calm Rapp and that while she attempted to do so, Petitioner exited his car, pointed a gun at her, and then fired a shot into the air. After the shot, Petitioner and Rapp got into the same car and left. Jamie and Joshua drove off and called the police. A tape of the 9-1-1 call was played for the trial court. Jamie made a written statement at the Farmington Hills Police Department later that day. She admitted that after the incident, Petitioner's mother approached Jamie and asked her to sign a statement recanting her earlier testimony to police. Jamie admitted to signing the recanting statement but claimed she did so to get Petitioner's mother to leave her alone and not because her statement to police was false.

Joshua Santti, the victim's husband, offered testimony that largely corroborated Jamie's testimony. He testified that he left the hotel on the night in question with Jamie. Joshua described how Petitioner and Jimmy Rapp drove up to him in the parking lot, and how he began to argue with Rapp. Joshua stated that Petitioner got out of the car,

2

pointed a pistol at Jamie, then aimed the gun over Jamie's head and fired. Afterward, Petitioner and Rapp got back into their car and drove away. Joshua testified that Petitioner was standing between five and ten feet away from Jamie when he fired the shot. Joshua was certain that Petitioner fired the gun. Joshua also spoke with police officers the next day and made a written statement. Like Jamie, Joshua admitted that he later signed a statement recanting his earlier testimony at the request of Petitioner's mother. He explained, however, that the recanting statement was false and that he only signed it because he was pestered to change his earlier testimony.

Livonia Police Officer Justin Thompson testified that he took the statements from Jamie and Joshua Santti. Both individuals were "nervous," "scared," and "shooken up" (sic) (ECF No. 9-3, PageID 1039–41) when he spoke with them, and they identified Petitioner as the shooter. Officer Thompson also spoke with Candace Polka who stated that she was in the parking lot when the incident occurred. Polka stated that she heard the argument, heard the shot fired, and saw Petitioner drive away in his car, but that she did not see who fired the shot.

Petitioner's trial counsel called a number of witnesses. First, Lauren James testified. She was friends with Petitioner and was Rapp's girlfriend at the time. James arrived at the party with Rapp, Petitioner, and Petitioner's girlfriend, Tiffany Groves, in a car driven by Groves. While in the hotel, an argument erupted that spilled into the parking lot. James got into the backseat of Groves's car to leave and saw Petitioner standing outside a few feet away. She heard a loud sound but did not see anyone with a gun. When Petitioner entered the car, James did not see him with a gun, nor did she

3

see Rapp with a gun. James never made a statement to the police regarding the incident.

Misty Herren-Wilder, Jamie Santti's sister, testified that she was present at the hotel during the incident. She described the arguments inside the hotel and how they spilled into the parking lot and testified that she discussed the incident with her sister. Herren-Wilder testified that Jamie told her that she was extremely intoxicated at the time of the incident and that she could not recall exactly what happened. Herren-Wilder also testified that Jamie told her on at least ten to fifteen occasions that she did not see Petitioner with a gun. Herren-Wilder also described preexisting tensions between the Santtis and Petitioner.

Petitioner's girlfriend at the time, Tiffany Groves, also testified for the defense. She described leaving the hotel room and getting into her car along with Petitioner, who sat in the passenger seat. As Groves began to drive out of the parking lot, Groves saw a crowd of about a dozen people arguing outside the hotel. Petitioner got out of the car to ask what was happening, and then Groves heard a shot. Groves testified that she was looking at Petitioner at the time she heard the shot, but she did not see him with a gun. After the shot, Petitioner jumped in the car and told Groves to drive away. Groves drove away with Rapp, Petitioner, and James. Groves gave a statement to police consistent with her testimony.

Petitioner testified in his own defense. He described the events inside and outside of the hotel and the preexisting tensions between himself and the Santtis. Petitioner estimated that there were about fifteen people arguing in the parking lot when he left the hotel. He entered Groves's car and began to leave when he saw Rapp

fighting with Joshua. Petitioner testified that he got out of the car to help break up the fight. He then heard a loud noise so he got back into the car and Groves drove away. Petitioner denied possessing or firing a gun.

Following closing arguments, the trial court made the following findings:

> [T]he testimony of the two complaining witnesses, Jamie Santti and Joshua Santti was very definitive and very definite that they saw the defendant point the gun at Jamie Santti, and then pull the gun up in the air and shoot in the air, above her head.
>
> The witnesses presented by the Defense, the first one being Lauren James, said that she was in the back seat of the car at the time that his incident happened. And she did not see who shot the gun.
>
> She said she didn't see the defendant with a gun. But it was not clear that she could actually see the defendant.
>
> She also was a friend of the defendant's. And they exchanged phone numbers on the day they met, which I found interesting.
>
> I didn't find her testimony very credible, and it didn't seem that she had a good vantage point from inside the car. Whereas Jamie and Joshua Santti were right outside, in front of the defendant.
>
> The next witness that testified was Misty Herren-Wilder. And she wasn't even at this incident.
>
> And while she did testify that her sister told her, and her sister being Jamie Santti, told her that she didn't remember the incident, and that Stephen didn't have a gun, I don't find her testimony to be credible.
>
> She admitted she has had an incident with her sister where her sister had her locked up. And she admitted that she is still a friend of the defendant's.
>
> The next witness was Tiffany Groves, the defendant's ex-girlfriend, who is still friends with him.
>
> And she also stated she was in the car. And none of these witnesses could say who shot the gun. They all heard a gunshot, but they never said who shot the gun.

> I find it very interesting, and very convenient that none of these witnesses saw who had the gun.
>
> And you know, the defendant himself I did not find credible.
>
> They all have a motive for trying to keep the defendant out of jail.
>
> And with regard to these affidavits that were signed, that the defendant's mother brought to Jamie and Joshua Santti, there was testimony that the defendant's mother was good friends with Jamie's mother.
>
> And it seems there was a lot of pressure being placed by the family to keep the defendant from being found guilty in this case.
>
> And for those reasons, I am finding the defendant guilty on all charges.

(ECF No. 9-5, PageID 1175–77.)

**B. Procedural History**

After sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate attorneys filed a motion to remand the case to the trial court for an evidentiary hearing on a claim of ineffective assistance of trial counsel. Petitioner argued that trial counsel was ineffective by failing to present evidence that Petitioner went to the police prior to the incident to complain that the Santtis were threatening to frame him for a crime and failing to investigate and call Rapp as a defense witness. Appellate counsel supported the motion to remand with a signed affidavit explaining what counsel believed witnesses would testify to at a hearing and a letter written by a Police Officer from the Wolverine Lake Police Department. The letter stated that Petitioner had contacted the officer about being harassed by an unnamed individual.

The Michigan Court of Appeals denied the motion to remand because Petitioner's "offer of proof . . . fail[ed] to adequately address whether [Petitioner could]

6

overcome the presumption that his trial attorney exercised sound trial strategy based on the information and evidence available to the defense at the time of trial." *People v. Young*, No. 317368 (Mich. Ct. App. Mar. 28, 2014) (ECF No. 1-1, PageID 177.)

Petitioner's counsel then filed an appellate brief that raised the following claims:

> I. Does the recanted testimony of Mr. and Mrs. Santti entitle the Defendant to an acquittal?
>
> II. Was Defense counsel ineffective based on inadequate trial preparation?
>
> III. Did the trial court err in excluding the testimony of Defendant's mother?

The Michigan Court of Appeals affirmed Petitioner's sentence in an unpublished opinion. *People v. Young*, 2014 WL 6679314 (Mich. Ct. App. Nov. 25, 2014). Petitioner filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims. The Michigan Supreme Court denied the application by standard form order. *People v. Young*, 863 N.W.2d 317 (Mich. 2015) (Table).

Petitioner then returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. Did the prosecution fail to present sufficient evidence to support the Defendant's firearm convictions?
>
> II. Did the prosecution fail to disclose exculpatory evidence regarding witnesses and fail to investigate those same witnesses?
>
> III. Was the verdict against the weight of the evidence?
>
> IV. Did Defendant meet the requirements for a third firearm offense enhancement?
>
> V. Did the trial counsel provide adequate representation?
>
> VI. Did appellate counsel provide adequate representation when counsel failed to raise the issue of ineffective assistance of trial counsel on direct appeal?

7

Petitioner supported this motion with affidavits from Misty Herron-Wilder, James Rapp, Tiffany Graves, and Petitioner's mother and a letter from the Wolverine Lake Police Officer. Petitioner admitted that he failed to raise the arguments on direct appeal but argued that the ineffective representation of his appellate counsel served as his "good cause" for failing to timely raise the claims. The trial court denied the motion without addressing the merits of the claims because it found that Petitioner did not establish "good cause" for failing to timely raise his claims. The court explained that "the simple fact that appellate counsel did not raise [Petitioner's] specific issues does not change the fact that Appellate counsel may legitimately winnow out weaker arguments in order to focus on those argument more likely to prevail." (ECF No. 9-10, PageID 1603–08) (internal citation omitted).)

After this dismissal, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which the court denied. *People v. Young*, No. 332577 (Mich. Ct. App. Aug. 3, 2016). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied under Rule 6.508(D). *People v. Young*, 900 N.W.2d 624 (Mich. 2017) (Table).

Petitioner subsequently filed a motion to correct an invalid sentence. The court denied the motion under Michigan Court Rule 6.502(G) as a prohibited successive motion for relief from judgment. Petitioner also filed a claim of appeal in the Michigan Court of Appeals, but it was dismissed for lack of jurisdiction. (ECF No. 9-13.) Thereafter, Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard form order. *People v. Young*, 913 N.W.2d 298

(Mich. 2018) (Table). While his application for leave to appeal was pending in the Michigan Supreme Court, Petitioner filed the instant federal habeas petition.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Habeas relief is not a substitute for ordinary appellate claims. *See Harrington*, 562 U.S. at 103. To obtain habeas relief, "a state

9

prisoner must show that the state court's ruling on the claim. . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation omitted).

### III. ANALYSIS

#### A. Ineffective Assistance of Trial Counsel

Petitioner first claims that he was denied effective assistance of trial counsel. He asserts that his trial attorney failed to call his mother and Rapp as defense witnesses and failed to present other evidence to further discredit the version of events testified to by the Santtis. As indicated above, Petitioner's appellate counsel first raised this claim in the motion to remand. This motion was supported with an affidavit signed by Petitioner's appellate counsel. The motion did not include any affidavits from the underlying witnesses, other than the letter by the Wolverine Lake Police Officer. As a result, the Michigan Court of Appeals denied the motion to remand because Petitioner's "offer of proof . . . fail[ed] to adequately address whether [Petitioner could] overcome the presumption that his trial attorney exercised sound trial strategy based on the information and evidence available to the defense at the time of trial." *Young*, No. 317368 (Mich. Ct. App. Mar. 28, 2014). This order denying the motion to remand constituted an adjudication on the merits of Petitioner's ineffective assistance of trial counsel claim. *See Nali v. Phillips*, 681 F.3d 837, 851–53 (6th Cir. 2012).

Petitioner nevertheless pressed this claim on appeal, which the Michigan Court of Appeal rejected on the merits:

> Defendant claims that defense counsel was constitutionally ineffective because he only visited defendant two times while defendant was incarcerated, refused to file pretrial motions challenging witness statements, refused to interview witnesses, and otherwise failed to

10

investigate the case. However, this Court's review is limited to the record, *Crews*, 299 Mich. App. at 400, and the record is devoid of any of defense counsel's investigative failings. Defendant's argument on appeal is that defense counsel's failure to properly investigate the case kept him from questioning Tiffany Groves, one of defendant's girlfriends, about a police interaction, calling Jimmy Rapp, another individual present during the shooting, as a witness, or introducing evidence of Jamie Santti's intoxication and complainants' motives to lie about defendant. As noted above, the decision whether to call or question witnesses is clearly within the purview of defense counsel's decisions on trial strategy, *Russell*, 297 Mich. App. at 716, and therefore, defense counsel could have determined not to question Groves on the alleged police interaction or call Rapp as a witness as a matter of strategy. Also, there is no indication in the record that Rapp would have testified in accord with what defendant claimed at trial, and even if he had, Rapp's testimony would have been cumulative considering the testimony of the four defense witnesses already presented. Also, defense counsel did cross-examine both complainants on their levels of intoxication on the night in question, and their respective dislike for defendant prior to the night in question. Therefore, defendant has provided no evidence that defense counsel failed to reasonably investigate the case, *Trakhtenberg*, 493 Mich. at 51–55, or that defense counsel's performance failed to meet an objective standard of reasonableness under prevailing professional norms, *Lockett*, 295 Mich. App. at 187.

Second, defendant has failed to establish any prejudice arising from defense counsel's performance. *Id.* Defense counsel adequately questioned complainants on their intoxication, dislike for, i.e., bias against, defendant, and their signed statements exculpating defendant. These tactics furthered the defense theory of the case that complainants were framing defendant. Defense counsel offered the testimony of Groves, Lauren James, another individual present during the shooting, and defendant himself, all stating that defendant never had a gun on the night in question. However, the trial court found the defense witnesses incredible and believed complainants' recounting of events. Simply because defense counsel's theory and strategy at trial did not work, does not render his performance ineffective. *Petri*, 279 Mich. App. at 412. The prosecution provided sufficient testimony to prove that defendant pointed a handgun at Jamie before firing a single bullet over her head, thus supporting all three convictions. Even if defense counsel's conduct fell below an objective standard of reasonableness, defendant has provided no evidence that, but for counsel's errors, the results of the proceedings would be different. *Lockett*, 295 Mich. App. at 187.

*Young*, 2014 WL 6679314, at *3–4.

The court concludes that the state court's decision did not constitute an unreasonable application of clearly established Supreme Court law. To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, meaning, "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Given that Petitioner did not offer any evidence to support his claim of ineffective assistance of trial counsel on direct appeal, it was not unreasonable for the state appellate court to find that Petitioner had not overcome the presumption that trial counsel's alleged failings were the result of reasonable trial strategy. The state appellate court noted that trial counsel adequately presented Petitioner's defense that the Santtis fabricated their testimony due to a preexisting dispute through cross-examination and the presentation of other defense witnesses. The decision of which witnesses to call and evidence to present to develop this defense was within the discretion of counsel. The state court did not have before it any additional evidence showing that counsel inadequately investigated the case or failed to present additional

defense evidence. The letter from the Wolverine Lake Police Officer only indicates that Petitioner sought advice regarding an unidentified individual who was harassing him. (ECF No. 1, PageID 72–73.) It does not name the Santtis and contains multiple layers of hearsay. Petitioner did not present the state courts with any evidence indicating that the Santtis threatened to frame Petitioner prior to the incident, that Petitioner informed trial counsel about his complaint to the officer, or that counsel failed to investigate the matter.

Habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). *Cullen* precludes this court from considering the new evidence presented by Petitioner in his motion for relief from judgment when considering the state court's adjudication of his ineffective assistance of counsel claim on direct appeal. Petitioner offered the state courts only an affidavit from an attorney who claimed he would present witnesses to testify regarding the facts underlying Petitioner's defense. Petitioner offered no evidence, beyond his appellate counsel's assertions, to prove the content of the defense witnesses' missing testimony. Therefore, Petitioner failed to establish in the state courts that his counsel performed deficiently or that he was actually prejudiced. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006)).

The state adjudication of Petitioner's ineffective assistance of trial counsel claim– as it was raised and supported by Petitioner during his direct appeal–was reasonable. Petitioner has failed to demonstrate entitlement to habeas relief for this claim.

## B. Procedural Default

Petitioner's remaining three claims were presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Petitioner claims that his appellate attorneys were ineffective by failing to properly support his ineffective assistance of trial counsel claim. He also asserts that his sentence was illegal because he should have been sentenced as a second-time habitual felony offender rather than a third-time offender. Finally, he asserts that constitutionally insufficient evidence sustained his convictions.

As indicated above, the trial court found review of these claims barred under Rule 6.508(D)(3) because Petitioner failed to demonstrate "good cause" for his failure to raise his claims on direct review. (ECF No. 9-10.) The Michigan Court of Appeals and Michigan Supreme Court subsequently denied relief in unexplained orders. (ECF Nos. 9-11; 9-12.)

If a claim is not considered by a state court "due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) (citing cases). It is well-established that Rule 6.508(D)(3) is such a rule and that its application by the state court bars habeas review of the defaulted claims. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). The state trial court applied this rule to Petitioner's post-conviction claims; therefore, the claims are barred from review absent a showing of cause and prejudice or that a failure to review the defaulted claims would result in a fundamental miscarriage of justice. *Guilmette v.*

*Howes*, 624 F.3d 286, 289–92 (6th Cir. 2010) (en banc); *Wainwright v. Sykes*, 433 U.S. 72, 84–87 (1977). Petitioner fails to satisfy either of these exceptions to overcome procedural bar.

Petitioner claims that the ineffectiveness of his appellate attorneys constitutes cause to excuse his procedural default. Petitioner asserts that his appellate attorneys were ineffective in presenting the three issues they raised on appeal because the claims were "weak at best." (ECF No. 1, PageID 35.) Petitioner argues that appellate counsel missed the stronger claims presented in his motion for relief from judgment, and he faults them for failing to support his ineffective assistance of trial counsel claim with the materials he presented in his motion for relief from judgment.

As indicated, Petitioner supported his ineffective assistance of counsel claims in his motion for relief from judgment with affidavit evidence that was not submitted by his appellate counsel in the motion for remand filed during his direct appeal. (ECF No. 9-9, PageID 1585–92.) None of these affidavits assert that the statements were available or made known to appellate counsel at the time of Petitioner's direct appeal. Of note, all the affidavits are dated in June or July of 2015—after Petitioner's direct appeal concluded in the Michigan Supreme Court on May 28, 2015.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the

particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

Plaintiff presented no evidence to the trial court in his motion for relief from judgment, and he proffers none here, that his appellate attorneys failed to investigate or interview the defense witnesses whose affidavit testimony Petitioner relies on to support of his ineffective assistance of counsel claim. The record shows that Petitioner himself obtained the affidavits from these witnesses in June and July of 2015. Petitioner offers only conclusory allegations that is his appellate attorneys performed deficiently in failing to obtain the affidavits—such allegations are insufficient to substantiate his claim. *See e.g.*, *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (finding that conclusory allegations of ineffective assistance of appellate counsel did not warrant habeas relief). While Petitioner might disagree with the strategies of his appellate counsel, he has not shown that counsel failed to provide a reasonable investigation and presentation of his claims based on the information available to them at the time of Petitioner's direct appeal. *See Strickland*, 466 U.S at 691.

In any event, Petitioner has failed to demonstrate prejudice because the affidavits do not contain information that would have provided a substantially stronger defense. Three of the affiants–James, Herren-Wilder, and Groves– actually testified for the defense at trial. Trial counsel's examination of these witnesses belies any allegation that he did not interview them before trial. In fact, these witnesses largely testified to the facts contained in their affidavits. While Rapp did not testify at trial, his affidavit does not

indicate that he was willing to do so. In fact, appellate counsel's motion to remand indicates that there was a warrant out for Rapp's arrest at the time of trial and that Rapp was not located until after the trial. (*See* ECF No. 1-1, PageID 94.) Petitioner offers no indication in either his motion to remand or motion for relief from judgment that Rapp was willing to cooperate with the defense at the time of trial or during direct appeal. Finally, while Petitioner's mother did not testify at trial either, she was not at the scene of the incident, and her testimony regarding the dispute between Petitioner and the Santtis would have been largely cumulative. Accordingly, Petitioner was not prejudiced by his appellate counsels' failure to obtain the affidavits to support the motion to remand.

Petitioner has likewise failed to demonstrate that his appellate attorneys were ineffective for failing to raise his sentencing or insufficient evidence claims on direct appeal. With respect to the sentencing claim, Petitioner had three prior felony convictions, so his ten-year sentence was authorized by Michigan law. (ECF No. 9-6, PageID 1184–87; MICH. COMP. LAWS § 750.227b(1) ("Upon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years.")). Petitioner's argument to the contrary amounts to a non-cognizable claim that the sentencing court misapplied state law. *See, e.g.*, *Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995).

With respect to the sufficiency claim, Petitioner asserts that because he fired the gun over the victim's head he was not guilty of felonious assault nor the felony-firearm offense. However, Petitioner ignores the obvious fact that many witnesses testified to seeing Petitioner point the gun *at* the victim before firing it over her head. As the

17

Michigan Court of Appeals noted, the felonious assault occurred the moment Petitioner pointed the gun at the victim. *See Young*, 2014 WL 6679314, at *4 ("The prosecution provided sufficient testimony to prove that defendant pointed a handgun at Jamie before firing a single bullet over her head, thus supporting all three convictions."). Appellate counsel was not ineffective for failing to raise meritless claims. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.").

As Petitioner's claims lack merit or are barred from review, the petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The court finds that reasonable jurists would not debate the resolution of Petitioner's claims because they are devoid of merit or barred from review. The court will, therefore, decline to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 1) is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: April 12, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 12, 2019, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\HEK\Staff Attorney\18-10403.YOUNG.2254.HEK.docx